UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ROBERT BURKE, <br><br> Plaintiff, <br><br> v. <br><br> BANGOR WATER DISTRICT, <br><br> Defendant. | Civil Action No. |

COMPLAINT
JURY TRIAL REQUESTED
INJUNCTIVE RELIEF REQUESTED

NOW COMES the Plaintiff, Robert Burke ("Mr. Burke"), by and through undersigned counsel, and complains against the Defendant, Bangor Water District ("District"), as follows:

JURISDICTION AND PARTIES

1. This action arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq,* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Rehab Act").

2. Mr. Burke is a United States citizen residing in the City of Bangor, County of Penobscot, State of Maine.

3. The District is an independent governmental entity located in the City of Bangor, County of Penobscot, State of Maine.

4. The District provides services to Eddington, Bangor, Hampden, Hermon, Orrington, small parts of Clifton and Veazie, and to the Hampden Water District.

5. The District is governed by a seven-member Board of Trustees.

6. The District had 15 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

1

7. This Court has subject matter jurisdiction over Mr. Burke's federal and state claims pursuant to 28 U.S.C. §§ 1331 and 1367.

8. On or about May 20, 2024, Mr. Burke filed a timely Complaint/Charge of Discrimination against the District alleging unlawful disability and retaliation discrimination with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC").

9. On or about February 24, 2025, the MHRC issued a Notice of Right to Sue with respect to Mr. Burke's state law claims.

10. On or about February 24, 2025, the EEOC issued a Notice of Right to Sue with respect to Mr. Burke's federal law claims.

11. Mr. Burke has exhausted his administrative remedies with respect to all claims set forth in this Complaint requiring administrative exhaustion.

12. The District received and continues to receive federal funds for purposes of the Rehab Act.

## JURY TRIAL REQUESTED

13. Mr. Burke requests a trial by jury for all claims and issues for which a jury is permitted.

## FACTUAL ALLEGATIONS

14. Mr. Burke began working for the District in 1996.

15. Mr. Burke became the Director of Water Treatment in 2013.

16. Mr. Burke supervised six Operators who provided 24/7 coverage of the water treatment plant.

17. Mr. Burke's final salary was $93,972.

18. Mr. Burke had a stroke on the weekend of October 7-8, 2023, but did not know it at the time.

19. Mr. Burke did not work on Monday, October 9, 2023, because it was a holiday.

20. Mr. Burke went to work on Tuesday, October 10, 2023, but felt awful. He left work and went to an Urgent Care center.

21. Medical providers at the Urgent Care center told Mr. Burke to go to the emergency department (ED) at St. Joseph's Hospital.

22. Mr. Burke went to the ED and was diagnosed with a stroke.

23. Mr. Burke was admitted to the hospital for in-patient care on Tuesday, October 10, 2023, and released on Thursday, October 12, 2023.

24. Mr. Burke's physical and mental impairments from his stroke constituted disabilities under the MHRA, the ADA, and the Rehab Act. Mr. Burke's stroke substantially limited major life activities including the functioning of his brain and nervous system. His stroke significantly impaired his health. His stroke was an acquired brain injury and a *per se* disability under the MHRA. The right side of his body was numb and tingling. He was fatigued, had brain fog, and weakness in his right hip, leg, and arm.

25. Mr. Burke notified Josh Saucier, the District's General Manager, that he had been hospitalized and that he was going to need time off from work to recover.

26. Holli Silva, Finance Manager for the District, gave Mr. Burke paperwork to sign up for family and medical leave benefits. She told Mr. Burke that he was eligible for leave through the end of December 2023. She told Mr. Burke that if he did not return to work before January 2, 2024, he would need to complete the paperwork for a 16-week extension of his leave.

27.  Mr. Burke provided Ms. Silva with medical updates to the best of his ability given the nature of his illness.

28.  Mr. Burke submitted forms to the District that were completed by his medical provider, Dr. Sanjay Pandey, dated October 25, 2023, and December 22, 2023.

29.  On December 23, 2023, Mr. Burke reported to the District that his recovery was taking longer than anticipated and he requested additional leave through early February 2024.

30.  On January 8, 2024, Ms. Silva wrote a letter approving Mr. Burke's leave through February 7, 2024, as a reasonable accommodation under the ADA. She also wrote, "We expect you to return to work full duty on February 8, 2024, absent a doctor's note to the contrary."

31.  On about January 26, 2024, Mr. Burke was admitted to an in-patient mental health facility for treatment of depression, anxiety, and suicidal ideation, and was released from the facility on about January 30, 2024.

32.  Mr. Burke's mental impairments constituted disabilities under the MHRA, the ADA, and the Rehab Act. His depression, anxiety, and related symptoms substantially limited major life activities including his ability to work and care for himself when viewed without mitigating measures. Mr. Burke's depression, anxiety, and related symptoms significantly impaired his health.

33.  On February 1, 2024, Mr. Burke informed Ms. Silva that he had suffered some additional health issues and that he had been receiving in-patient care up until January 30, 2024.

34.  Ms. Silva asked Mr. Burke to provide a doctor's note indicating the health reason why he needed to be out of work and his expected return to work date.

35.  Mr. Burke told Ms. Silva that he needed an extension of his medical leave. Ms. Silva told Mr. Burke that his leave would be considered as an additional ADA accommodation.

4

36. Mr. Burke was very worried that the District was going to fire him if he did not return to work. He had been told that his medical leave was no longer "job-protected" as it had been when he was covered by Maine's Family and Medical Leave Requirements law. He was mindful of the warnings he had received about needing to return to work by February 8, 2024, or he might not have a job.

37. On February 6, 2024, Mr. Burke obtained another form signed by his doctor stating that he needed medical leave through March 10, 2024.

38. Mr. Burke held off on submitting the February 6, 2024 form to the District because he was afraid that the District would react badly when it learned that he needed additional leave, especially because the form disclosed that he had suffered from suicidal ideation.

39. On February 7, 2024, Mr. Burke texted Ms. Silva and told her that he wanted to return to work (which would have been against his doctor's advice) but that he wanted to take Thursday, February 8 and Friday, February 9, 2024, off as paid vacation days. (At the time, Mr. Burke had more than 200 hours of accrued vacation time.) Mr. Burke told Ms. Silva that he would return on Monday but that he might need additional leave in the future.

40. Ms. Silva denied Mr. Burke's vacation time request. She told Mr. Burke that he needed to provide a doctor's note to take two days (the 8th and the 9th) off for health reasons.

41. On February 7, 2024, Betsy Oulton from HR Maine Consulting, LLC, wrote an email to Mr. Burke that read:

> "…If you return to work tomorrow with the appropriate documentation, please report directly to Holli [Silva]. If you are unable to return to work, we need a doctor's note for us to review."

42. On the morning of February 8, 2024, Ms. Oulton called Dr. Pandey's office and left a message.

43. Ms. Oulton wrote an email to Mr. Burke on the afternoon of February 8 at 2:15 pm, and said she was waiting for a call back.

44. Mr. Burke's doctor's office, St. Joseph Healthcare, told Mr. Burke that Dr. Pandey spoke with Ms. Oulton about him later that day on February 8, 2024.

45. Mr. Burke told Ms. Oulton and Ms. Silva via email that he would drop off the paperwork the following day, on February 9, 2024.

46. Defendant claimed to the MHRC that Dr. Pandey returned Ms. Oulton's call and told her that he did not believe that Mr. Burke would ever be able to return to work. This is false.

47. It is notable that the Defendant did not submit an affidavit or even a statement signed by Ms. Oulton and produced no contemporaneous documentation corroborating this claim.

48. Dr. Pandey did not tell Ms. Oulton that he did not believe that Mr. Burke would ever be able to return to work.

49. Dr. Pandey's contemporaneous medical records dated February 6, 2024 (discussed in paragraph 50 below) and another contemporaneous document signed by Dr. Pandey on March 17, 2024 (discussed in paragraph 62 below) contradict Defendant's claim to the MHRC.

50. A note in Mr. Burke's medical file regarding the phone call reads:

> <u>Dr. Sanjay P. Pandey, MD at 2/8/24  3:42 PM</u>
> Spoke with Betsy [Oulton]. She is looking for the disability form which I completed when Robert was in the office on 02/06/24. …

51. Dr. Pandey's February 8, 2024 entry shows that Dr. Pandey reiterated to Ms. Oulton that in his opinion, Mr. Burke needed additional medical leave through March 10, 2024, as stated in the form he recently completed and signed.

52. On February 9, 2024, Mr. Burke submitted the form that had been signed by Dr. Pandey on February 6, 2024. The form indicated that Mr. Burke was suffering from suicidal ideation, that he had been hospitalized from January 26 to January 30, 2024, and that he was seeing a mental health counselor. The form indicated that Mr. Burke's functional restrictions would last until March 10, 2024.

53. On February 13, 2024, Ms. Silva requested a meeting with Mr. Burke the following day.

54. During a telephone call on February 14, 2024, Ms. Silva and Ms. Oulton terminated Mr. Burke's employment effective March 1, 2024.

55. During the February 14, 2024 call, Ms. Silva and Ms. Oulton pushed Mr. Burke to call MainePERS to file for long term disability benefits, which indicates that they believed that Mr. Burke was not employable because of his mental and physical disabilities.

56. On March 11, 2024, Marc Edelman, the District's Interim General Manager, wrote a termination letter. His letter included the following facts, which are true:

   a. Mr. Burke exhausted Maine Family Leave on December 31, 2023.
   b. Mr. Burke was approved for an extension of leave as an accommodation under the ADA through February 7, 2024.
   c. Mr. Burke requested an additional extension through March 10, 2024.

57. In the March 11 termination letter, Mr. Edelman also wrote,

"However, your doctor advised that you would be unable to return to work for an extended, indefinite period of time."

58. As noted above, Defendant's claim to the MHRC that Dr. Pandey indicated he did not believe that Mr. Burke "would ever be able to return to work" is false.

59. Mr. Edelman also wrote in the March 11 letter:

"Based on the length of time you have been out of work and the indefinite nature of your leave request; we have determined that we cannot accommodate this leave request."

60. Mr. Burke did not request indefinite leave; he was asking for leave through March 10, 2024.

61. After Mr. Burke was fired, he asked Dr. Pandey for a note about his readiness to return to work.

62. On March 17, 2024, Dr. Pandey wrote a note stating, "It is my medical opinion that Robert Burke was able to return to work starting from 3/10/24 with no restrictions."

63. It was not an undue burden for the District to accommodate Mr. Burke's leave of absence until March 10, 2024, when he was cleared to return to work without restrictions.

64. The District transferred Mr. Burke's duties to Jacob Spinney, an existing employee, who was the Water Quality Manager and trained by Mr. Burke to cover for him (Mr. Burke) when he was unavailable.

65. The District did not hire Mr. Burke's replacement until July 8, 2024.

66. It would not have been an undue burden to keep Mr. Burke's job open until March 10, 2024, when he was cleared to return to work.

67. Defendant's main defense to Mr. Burke's claim of disability discrimination and retaliation is the unfounded assertion that Mr. Burke's own doctor told Ms. Oulton in a telephone call that he (the doctor) did not believe that Mr. Burke would ever be able to return to work.

68. Mr. Burke has proof that the stated reason for his termination is false.

69. Furthermore, on May 17, 2024, the MHRC sent a copy of Mr. Burke's Charge of Discrimination to the Defendant which included the allegation that Mr. Burke was cleared to return to work by Dr. Pandey on March 17, 2024. It also included a copy of Dr. Pandey's March 17, 2024, letter reflecting that Mr. Burke could have returned to work on March 10, 2024.

70. Even if Defendant mistakenly believed that Mr. Burke would not be able to return to his job as of March 11, 2024, Defendant was aware - when it received the Charge from the MHRC in May 2024 – that Mr. Burke was cleared to return to work. In spite of this, Defendant did not reach out to Mr. Burke and did not reinstate him even though Mr. Burke had not yet been replaced.  This is strong evidence that Defendant's claimed misunderstanding regarding the alleged statement made by Dr. Pandey about Mr. Burke's ability to return to work is a pretext.

71. Defendant has implicitly acknowledged that its original stated reason for terminating Mr. Burke does not withstand scrutiny.

72. In its submission to the MHRC, the Defendant brought up for the first time a new excuse for the termination, namely that Mr. Burke would have (allegedly) been fired for misconduct if he had been allowed to return to work. This claim is also false.

73. According to Defendant, Mr. Burke was working at another job during times when he was supposed to be working for the District.

74. It is true that between 2021 and 2023 (ending months before his stroke), Mr. Burke had a side job as an Uber driver. He worked primarily on his days off. On a few occasions, Mr. Burke left work early to drive a customer to their destination. He always let his manager and crew know if he was leaving early. He used vacation time or comp time to make up the time. No one ever raised any concerns about Mr. Burke's side job while he was employed.

75. Mr. Burke has disabilities as defined by the ADA, MHRA, and Rehab Act.

76. Mr. Burke engaged in protected activity when he requested and needed medical leave as reasonable accommodation for his disabilities.

77. Mr. Burke was terminated due to disability discrimination.

78. Mr. Burke was terminated for exercising his rights under the MHRA, the ADA, and the Rehab Act.

79. Mr. Burke was terminated for reasons that could be addressed through reasonable accommodation.

80. The District violated the MHRA, the ADA, and the Rehab Act by failing to provide reasonable accommodations to Mr. Burke and instead terminated his employment.

81. Mr. Burke's protected class status and protected activities were factors that made a difference in his termination.

82. The District's unlawful discrimination and retaliation is evidenced by probative timing.

83. The District's unlawful discrimination and retaliation are evidenced by the animus of Ms. Silva, Mr. Edelman, and Ms. Oulton towards Mr. Burke.

84. The District's unlawful discrimination and retaliation are evidenced by the fact that the District has provided false reasons to justify the termination.

85. The District violated Mr. Burke's rights by participating in a contractual or other arrangement or relationship with Ms. Oulton which had the effect of subjecting Mr. Burke to unlawful discrimination and retaliation.

86. The District's unlawful discrimination and retaliation are evidenced by the fact that the District dissembled the facts about communications with Dr. Pandey.

87. In addition to causing Mr. Burke economic damages, Defendant's discrimination and retaliation has caused Mr. Burke substantial stress, anxiety, and humiliation and other non-economic damages.

88. Defendant knowingly violated Plaintiff's state and federal rights and/or violated Plaintiff's rights with reckless indifference and so are liable for punitive damages.

## COUNT I: MHRA – Disability Discrimination

89. Paragraphs 1-88 are incorporated by reference.

90. Defendant has engaged in unlawful disability discrimination.

## COUNT II: MHRA – Failure to Accommodate

91. Paragraphs 1-90 are incorporated by reference.

92. Defendant's conduct violated its duty under the MHRA to engage in the interactive process and to provide reasonable accommodations.

## COUNT III: MHRA – Retaliation

93. Paragraphs 1-92 are incorporated by reference.

94. Defendant's conduct violated the MHRA's prohibition against interfering with any individual in the exercise or enjoyment of the rights granted under the MHRA.

## COUNT IV: ADA

95. Paragraphs 1-94 are incorporated by reference.

96. Defendant engaged in unlawful disability discrimination.

## COUNT V: ADA – Failure to Accommodate

97. Paragraphs 1-96 are incorporated by reference.

98. Defendant's conduct violated its duty under the ADA to engage in the interactive process and to provide reasonable accommodations.

## COUNT VI: ADA Retaliation

99. Paragraphs 1-98 are incorporated by reference.

100. Defendant's conduct violated Plaintiff's right to be free from retaliation for exercising his rights under the ADA.

## COUNT VII: REHABILITATION ACT – Disability Discrimination

101. Paragraphs 1-100 are incorporated by reference.

102. Defendant has engaged in unlawful disability discrimination.

## COUNT VIII: REHABILITATION ACT – Failure to Accommodate

103. Paragraphs 1-102 are incorporated by reference.

104. Defendant's conduct violated its duty under the MHRA to engage in the interactive process and to provide reasonable accommodations.

## COUNT IX: REHABILITATION ACT – Retaliation

105. Paragraphs 1-104 are incorporated by reference.

106. Defendant's conduct violated the MHRA's prohibition against interfering with any individual in the exercise or enjoyment of the rights granted under the MHRA.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by Defendant to be in violation of his rights;

B. Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate his rights;

C. Order Defendant to reinstate Plaintiff or award front pay to Plaintiff;

D. Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendant's discrimination;

E. Award equitable-relief for back pay, benefits and prejudgment interest;

F. Award compensatory damages in an amount to be determined at trial;

G. Award punitive damages in an amount to be determined at trial;

H. Award nominal damages;

I. Award attorneys' fees, including legal expenses, and costs;

J. Award prejudgment interest;

K. Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability or retaliation under the ADA, Rehab Act and MHRA;

L. Permanently enjoin Defendant from participating in a contractual or other arrangement or relationship that has the effect of subjecting Defendant's employees to unlawful discrimination or retaliation;

M. Require Defendant to mail a letter to all employees notifying them of the verdict against them and stating that Defendant will not tolerate discrimination or retaliation in the future;

N. Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

O. Require that Defendant train all management level employees on the protections afforded by the ADA, Rehab Act and MHRA;

P. Require that Defendant place a document in Plaintiff's personnel file which explains that Defendant unlawfully terminated him because of unlawful discrimination and retaliation; and

Q. Grant to Plaintiff such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: February 26, 2025 | */s/* Chad T. Hansen  <br>Chad T. Hansen  <br>Attorney for the Plaintiff  <br>  <br>EMPLOYEE RIGHTS GROUP  <br>92 Exchange Street 2nd floor  <br>Portland, Maine 04101  <br>Tel. (207) 874-0905  <br>Fax (207) 874-0343  <br>Chad@EmployeeRightsLaw.Attorney |